UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMY ELLERT

      Plaintiff,

   v.

CHIPOTLE MEXICAN GRILL INC.

      Defendant.

Case No. 1:07cv026

Judge Michael R. Barrett

## ORDER

This matter is before the Court pursuant to Defendant's motion for summary judgment (Doc. 33). Plaintiff filed a memorandum in opposition (Doc. 45) to which Defendant replied (Doc. 53). For the foregoing reasons, Defendant's motion is hereby DENIED. In addition, Defendant also filed a motion to exceed page limit (Doc. 52). This motion is hereby GRANTED.

    I.    Facts.

Despite the significant amount of time devoted to the facts by each party in their respective briefs, the relevant facts are fairly straightforward. Ellert had been an employee of Chipotle since February 2004. In April, 2004 she was promoted to restaurant manager (aka general manager) of the Western Hills store where she remained until May 2005 when she was transferred to the Hyde Park store to work in the same capacity until her termination on July 20, 2006. Ellert Depo., p18, 38-39.

In September 2005, Ellert fell off of a ladder at work and injured her back. Id. at p38. After a delay in obtaining approval from the Ohio Bureau of Workers Compensation, Ellert had surgery on January 26, 2006 and took leave under the Family and Medical Leave Act ("FMLA") until March 17, 2006. Id. at p45. Ellert asserts she was terminated in retaliation

for taking FMLA leave and filing a Workers' Compensation claim.

Immediately prior to her leave, Chipotle promoted Laura Volski to area manager. Ms. Volski assumed full responsibilities for her new role in February 2006. Ms. Volski's new area included the Hyde Park store. Volski Depo. p. 6, 18. During Ellert's leave, Volski had to cover for Ellert at the Hyde Park store and found this to be an inconvenience. Tepe Depo., p75-77. Upon Ellert's return to work, Volski met with her and explained her expectations which included keeping a clean store, crew and management development, proper customer service and completion of the daily food safety checklist. Volski Depo., p 82.

It is undisputed that Ellert performed well at the Western Hills store and at the Hyde Park store prior to her FMLA leave and that she received "above expectations" reviews. In fact, according to Ellert, Volski and Kaiser told Ellert that she was going to be the first Restauranteur in the city. Ellert Depo., p147-148. This would be a promotion that would allow her to choose her own store, raise her own management team and share in the profits. To be a Restauranteur, she would have to be recommended by her area managers, approved by the Abstractor, and be interviewed and accepted by the President/CEO of Chipotle. Ellert Depo., p 147-148; Tepe Depo., p67-68.

After Ellert returned to work, Volski noticed several areas of concern with the Hyde Park store. For example, Volski discovered that the food safety checklist was not being done on a daily basis and that the store did not have the necessary probe or laser thermometer necessary to complete the checklist. Ellert disputes this allegation asserting that Volski only made vague comments to her about "sketchy stuff" going on at the Hyde Park store but that she refused to explain in detail what she was referring to. Ellert Depo., p73-75. In addition, the store was not clean. There were cobwebs, the floors were

2

blackened and the men's restroom was filthy and in disrepair. See Doc. 33, Exhibits 12 and 17; Volski Depo., p49-5 and 84-86. In addition, Volski believed that Ellert was inadequately staffing many facets of the store's operations and that the store was lacking in small wares used to prepare food. Id.; Volski Depo., p102-104. She also discovered an ice scoop in the ice, which is a health code violation. Doc. 33, Exhibit 12.

Volski was not the only Chipotle employee to notice the problems at the Hyde Park store. Lisa Crosby, Operations Director, and Susan Crawford, Human Resource Generalist, also found the store to be extremely dirty with inadequate staff and incomplete checklists. Crosby Depo., p 24-31, 59; Crawford Depo., p 100-105. Despite both Volski and Crosby discussing these matters with Ellert, they saw no improvement. See Doc. 33, Exhibit 12.

In June, 2006 it was discovered by Volski that Ellert had replaced Chipotle's regular landscaper with an unbonded, uninsured 17 year old who was receiving Burrito Bucks in exchange for his services. Chipotle contends that this is a direct violation of Chipotle policy. See Doc. 33, Exhibit 14. However, Ellert disputes this allegation. Additionally, a customer complaint was received by Chipotle complaining about the service received at the Hyde Park store.

Then, on July 3, 2006, the State of Ohio Department of Health inspected the Hyde Park store and found that the ice scoop was still being kept in the ice and that the cold storage was out of code. See Doc. 33, Exhibit 16. Over that next weekend, while Ellert was on vacation, the walk-in refrigerator went out and all the food spoiled. Ellert Depo., p. 258-259. It is Chipotle's position that had employees of the Hyde Park store been completing their daily checklists that the results would have alerted the employees that the walk-in refrigerator was failing. Volski and Crawford also discovered that there were

3

several thousand dollars of unpaid invoices sitting in the office of the Hyde Park store, including $3200 worth of invoices from the City of Cincinnati for false alarms of the security system. Although Ellert asserts she was disputing these charges, the City of Cincinnati had taken Chipotle to collections. See Doc. 33, Exhibit 18.

At this point, based upon the unpaid invoices and the lack of effort on Ellert's part to correct the areas of concern of Volski, Ellert was terminated. This decision was made by Crosby in consultation with Volski and Crawford. There may have been conversations with Chris Tepe and Kurt Kaiser as well, both of whom were Ellert's former area managers. Volski Depo., p162; Crosby Depo., p95-98. Ellert asserts that the area manages refused to give her a reason as to why she was being terminated. Ellert Depo. P. 120-121. However, Crawford claims to have informed her of a few of the reasons for the termination. Volski Depo., p 177-178; Crawford Depo., p207-208.

II. Legal Analysis.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere

4

existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also *L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc.,* 9 F.3d 561 (7th Cir. 1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir.), cert. denied, 506 U.S. 832, 121 L. Ed. 2d 59, 113 S. Ct. 98 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Beatty v. UPS,* 267 F. Supp. 2d 823, 829 (S.D. Ohio 2003).

In this case, Plaintiff brings a Workers' Compensation retaliation claim under Ohio Revised Code § 4123.90 and a "FMLA Interference" claim which is essentially a retaliation claim under the FMLA against Defendant for allegedly terminating her for taking FMLA leave. See Doc. 1.

O.R.C. §4123.90 states, in relevant part:

> ...No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act

5

for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer...

Proving a violation of O.R.C. §4123.90 is done in the same manner as federal discrimination and retaliation cases, using the *McDonnell Douglas* burden shifting approach. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Young v. Stelter & Brink, Ltd.*, 174 Ohio App.3d 221, 2007 Ohio 6510, ¶20. Unless direct evidence is available, a plaintiff has the burden of proving a *prime facie* case of retaliation by showing that: (1) she was injured on the job; (2) she filed a workers' compensation claim; and (3) there is a causal connection between the filing of the claim and the termination. *Young v. Stelter & Brink, Ltd.*, 174 Ohio App.3d 221, 2007 Ohio 6510, ¶20. If this can be shown, then the burden shifts to the Defendant to prove a legitimate, nondiscriminatory basis for the termination. If this is shown, the burden shifts back to the Plaintiff to show that the legitimate, nondiscriminatory basis is, in fact, only a pretext to retaliation. *Id.*

Defendant argues that Plaintiff has abandoned this claim by failing to address it in its memorandum in opposition to summary judgment. (See Doc. 53, p21). However, Plaintiff did address the claim briefly at the end of its memorandum, stating, simply, that the same evidence that establishes her FMLA retaliation claim also establishes her workers' compensation retaliation claim. (Doc. 45, p30).

To establish a prima facie case of retaliation for taking FMLA leave, a plaintiff must establish the following: (1) she availed herself of a protected right under the FMLA; (2) she suffered an adverse employment decision; and (3) there was a causal connection between the FMLA leave and the adverse employment action. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)

The Court will address the two claims together since the burden shifting analysis is

the same for both claims. It is not disputed that Ms. Ellert was injured on the job, that she filed a workers' compensation claim, that she took leave under the FMLA and that she was subsequently terminated. The issue before this Court is whether or not there is a causal connection between the workers' compensation claim, FMLA leave and her termination. If such a causal connection can be shown, then the burden shifts to Defendant to establish a legitimate, nondiscriminatory reason for Ms. Ellert's termination. If that is shown, then the burden shifts back to Ms. Ellert to establish that such reason was a pretext for retaliation.

Plaintiff argues that the causal connection is met due to the close proximity in time of the events, four months between when Ellert returned from leave and her termination. She also argues that Volski's complaints about Ellert's absence, her dismantling the management team at Hyde Park, and the allegedly false reasons for Ellert's termination further demonstrate this connection.

Defendant argues that Volski made one isolated comment to Tepe about being inconvenienced and that this one isolated comment does not equate to vociferously complaining. Defendant further argues that the evidence does not support that Volski dismantled the Hyde Park management team, nor does it support that the reasons for her termination were false.

For Plaintiff to establish a causal connection, she must proffer evidence sufficient to raise the inference that her filing of a Workers' Compensation claim and/or her taking FMLA leave was the likely reason for her termination. In other words, she must put forth some evidence to deduce a causal connection between her termination and the protected activity which would allow the court to draw reasonable inferences from that evidence, providing that such evidence is credible. *Nguyen v. City of Cleveland,* 229 F.3d 559, 566

(6th Cir. 2000). Despite Plaintiff's assertion to the contrary, "temporal proximity itself is insufficient to find a causal connection" between her FMLA leave and her termination. *Randolph v. Ohio Dep't of Youth Services*, 453 F.3d 721, 737 (2006); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d at 317. Thus, the Court cannot solely rely on the fact that only four months elapsed between when Ellert returned from leave and when she was terminated.

As to alleged complaints made by Volski about being inconvenience by Ellert's leave, the Court agrees with Defendants as the deposition testimony of Tepe clearly support Defendant's assertion that Tepe could only remember one comment being made by Volski about being inconvenienced by Ellert's leave. See Tepe Depo., p 77. This isolated comment is insufficient to establish a causal connection. In addition, after reviewing the deposition transcripts, the Court does not find that the evidence supports the allegation that Volski dismantled the management team at the Hyde Park store to harm or retaliation against Ellert. Ellert alleges that Volski was also not happy with the performance of Ellert's management team since she terminated at least four employees from the morning crew at the Hyde Park store and later took away three of her strong assistant managers. However, the deposition testimony does not support this allegation. The employees from the morning crew were terminated because of a fight that took place in the store. Ellert testified that she was not even working that day and could not speak to the fight or whether or not their firings were justified. Ellert Depo., p74-75. Thus, Ellert has presented no evidence that their termination had anything to do with Ellert taking FMLA leave. Additionally, Volski testified that the managers were transferred for reasons that had nothing to do with Ellert. See Volski Depo., p60-71. Again, Ellert has no evidence, other than her own self-serving opinion, to support the allegation that these transfers were

related to her leave. *See Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 623 (6th Cir. 2003)(unsupported speculation cannot form the basis for demonstrating pretext).

Despite the above findings, the burden of establishing a *prima facie* case is not intended to be an onerous one (*Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001) and the Court finds three inferences which can be drawn for Ellert's termination. It is undisputed that Ellert was a model employee with no disciplinary history prior to her leave, thus, the inferences which can reasonably be drawn by the Court are: (1) that she did not perform as well after her leave as she did before; and/or (2) that Volski was a tougher area manager and expected more than Ellert's prior area manager; and/or (3) that Ellert was being retaliated against for filing a Workers' Compensation claim and/or taking FMLA leave. Because the third inference is a reasonable one, the Court will continue with its analysis.

Defendant argues that it had a legitimate, non discriminatory reason for Plaintiff's termination, specifically, that she was failing to adequately perform her job in numerous respects. Although the Plaintiff disagrees with this reason, the Court finds that there is ample evidence to support Defendant's argument.

Therefore, the burden now shifts back to the Plaintiff to establish pretext. The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to motivate the adverse action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). The ultimate burden of persuading the trier of fact that the employer intentionally retaliated against her remains at all times with the plaintiff. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A stated reason for the termination cannot be pretext unless it is shown to be

false and that retaliation was the real reason. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Unsupported speculation cannot form the basis for demonstrating pretext. *See Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 623 (6th Cir. 2003).

Plaintiff argues that Defendant is "throwing in the kitchen sink" in terms of the reasons for her termination and that she has demonstrated that genuine issues of material fact exist as to each reason. These reasons include that she repeatedly failed to complete food temperature logs, did not have thermometers and other equipment in the store, failed to meet Chipotle's standards for cleanliness, failed to adequately staff the fax line, failed to take coaching seriously, used a "neighbor kid" to do landscaping and paid him with Burrito Bucks, received 10 critical violations on a health inspection report, allowed the walk-in refrigerator to fail, and refused to pay invoices causing the City of Cincinnati to send Chipotle to collections. Plaintiff also asserts that the defense witnesses are not credible. Plaintiff arguments essentially boil down to a "he said, she said" type of argument. Although much of Plaintiff's version of events come from an affidavit attached to her reply brief[1], there is also sufficient testimony in her deposition that contradicts some of the testimony of the defense witnesses thereby creating a genuine issue of fact as to the conflicting testimony.

Most of Defendant's early factual assertions are not documented. The only documentation prior to July, 2006 is the incomplete Golden Burrito Report dated May 31, 2006 (Defendant's Exh. 12). However, as of July, 2006, there is documentation to support

---

[1] It is well-settled that a party who has been examined at length at deposition cannot create a genuine issue of material fact by later submitting an affidavit that contradicts previously sworn testimony. *Penny v. United Parcel Serv.*, 128 F.3d 408, 416 (6th Cir.1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986).

Defendant's claims, i.e, the Health Inspection Report of July 3, 2006 (Defendant's Exh. 16), the Collection Notice dated July 5, 2006 (Defendant's Exh. 18) regarding the City of Cincinnati's invoices, and the first written warning dated July 11, 2006 (Defendant's Exh. 17). Ellert was terminated on July 20, 2006, however, it does not appear from the record that any additional events took place between the first written warning and her termination. The Court notes that the written warning form used by Defendant provides for a first, second and third written warning, although it appears that Ellert only received the first written warning. Although not addressed by the parties, the Court finds this to be suspect.

     Plaintiff further argues that there are similarly situated employees who did not take FMLA leave and were not fired for some of the same reasons that she was fired. Defendant counters that there is no similarly situated employee as no one failed to perform in all the combined areas that Ellert did. A satisfactory showing that similarly situated employees, who do not belong to the protected class, were treated differently with regard to a violation of a work rule can lend support to a plaintiff's pretext argument. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997); *see also Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000) (plaintiff can prove pretext under the third *Manzer* prong, the proffered reason was insufficient to motivate the adverse action, by demonstrating that he was treated differently than similarly situated employees). Defendant argues that the standard for a comparable is that "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *citing Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. Ohio 1998). However, the Court in *Ercegovich* went on to state that "The plaintiff need not

11

demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather, as this court has held in *Pierce* [*Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994)], the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.'" *Id. citing Pierce,* 40 F.3d at 802. Thus, this Court will consider as comparables those stores/restaurant managers who worked under Volski as their area manager and who had issues similar to those that Ellert had. The Court does not agree with Defendant that a comparable must have engaged in the exact same wrongdoings. Similar wrongdoings are sufficient in this case due to the long list of reasons Chipotle gave for Ellert's termination. If one of those reasons is discredited, it casts doubt on the remaining reasons. *See Smith v. Good Samaritan Hospital*, Case No. 1:06cv207, 2007 U.S. Dist. LEXIS 48304, *19 (S.D. Ohio July 3, 2007) *citing May v. Pilot Travel Centers, LLC*, 2007 WL 108001, *6 (S.D. Ohio Jan. 5, 2007) (slip op.), *citing Powell v. Rumsfeld*, 2002 WL 1752233, at *3 (7th Cir. July 24, 2002) (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 70 (7th Cir. 1995) ("there may be cases where the multiple reasons offered by the defendant 'are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment' by showing the pretextual nature of just one reason."); *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1127 (10th Cir. 2005) (holding that discrediting one proffered reason, such as the dominant reason, can cast doubt on all remaining reasons, even if they have not been discredited). In this case, Defendant did not offer one reason as being more dominant than the others and it continues to argue that Ellert was terminated for a variety of reasons.

As to the Golden Burrito Report and the Health Inspection Report, Plaintiff has submitted sufficient evidence to create a genuine issue of fact as other stores/restaurant

12

managers had Golden Burrito Reports that were just as bad as the Hyde Park store's and that had a negative Health Inspection Report wherein the managers were not terminated. (See Pl. Exhs. 15 - 25, 4).  However, it does not appear from the record that any other store manager had failed to pay invoices that were turned over to collections.  Had this been the only reason given for Plaintiff's termination, she may not have been able to show pretext.  However, when taken in consideration with all the other reasons that may not be legitimate, the Court finds a genuine issue of fact exists to establish pretext.  Defendant's motion, except as set forth below, is denied.

Finally, the Defendant raises issues that relate to the damages alleged by Plaintiff. Plaintiff argues this is premature.  Without agreeing with either party, the Court declines to address these issues at this time.

III.     Conclusion.

Based upon the foregoing, Defendant's motion for summary judgment is DENIED.

**IT IS SO ORDERED**.

                                        s/Michael R. Barrett
                                        Michael R. Barrett, Judge
                                        United States District Court